UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| AARON MALONE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-269 |
| | § | |
| KRISTINE ZAMBRANO, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE**

Plaintiff Aaron Malone is a Texas inmate appearing *pro se* and *in forma pauperis*. He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, Plaintiff has stated: (1) claims for the denial of access to the courts, arising from certain conduct occurring in July and August 2018, against **Sergeant Kristine Zambrano, Mailroom Supervisor (MS) Selles, and Officer Thompson** in their individual capacities; and (2) retaliation claims against **Sgt. Zambrano, Major Gould, MS Selles, Unit Grievance Investigator (UGI) Christina Rodriguez, Officer Laundry, and Officer Thompson** in their individual capacities. Accordingly, it is respectfully recommended that these claims be **RETAINED.** The undersigned will order service on these defendants.

For the reasons set forth below, the undersigned further recommends that: (1) **Officer Martin, Officer Cordova, or Officer Espinoza** be **DISMISSED** from this action; (2) Plaintiff's claims for money damages against all individuals Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; (3) Plaintiff's claims against **the Texas Department of Criminal Justice (TDCJ)** be **DISMISSED** as barred by the Eleventh Amendment; (4) Plaintiff's claims for declaratory and injunctive relief against Defendants be **DISMISSED** as rendered moot; and (5) Plaintiff's claims against the remaining defendants be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.  JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.  PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID).[1] Plaintiff's claims and allegations in this action arise in connection with his previous assignment to the McConnell Unit in Beeville, Texas.

---

[1] On December 20, 2019, Plaintiff notified the Court that he resides at the Bee County Jail in Beeville, Texas.  (D.E. 18).  However, a review of the TDCJ website reflects that he may be currently incarcerated at the Michael Unit in Tennessee Colony, Texas.  Plaintiff is reminded that he must notify the Court of any change of address during the pendency of this case.  (D.E. 7, ¶ 10).  "Failure to file such notice may result in this case being dismissed for want of prosecution."  (D.E. 7, ¶ 10).  Accordingly, Plaintiff is DIRECTED to file a notice with the court within fourteen (14) days stating his current address.

In addition to suing the TDCJ, Plaintiff names the following McConnell Unit officials in his complaint: (1) Sgt. Zambrano; (2) Assistant Warden Kenneth Putnam; (3) Major Gould; (4) MS Selles; (5) UGI Rodriguez; (6) Officer Laundry; (7) Officer Martin; (8) Officer Cordova; (9) Officer Espinoza; and (10) Officer Thompson. Plaintiff sues each individual official in his or her individual and official capacity. Plaintiff seeks declaratory, injunctive, and monetary relief.

Plaintiff's Original Complaint is over sixty pages in length. He has also attached numerous exhibits to his Original Complaint. Plaintiff's rambling, narrative style in presenting his allegations has made it difficult for the Court to evaluate and screen his claims. On October 29, 2019, Plaintiff appeared before the undersigned at a brief *Spears*[2] hearing, where he explained in general the claims he seeks to raise in this case. Nevertheless, on October 30, 2019, the undersigned ordered Plaintiff to file a More Definite Statement to assist the Court in evaluating the numerous claims he seeks to raise in this action. (D.E. 13). As part of the October 30 Order, the undersigned directed Plaintiff to answer certain questions with respect to each of the eleven named defendants. (D.E. 13, p. 2). Plaintiff was cautioned that the Court will not consider any claim against any defendant who is not listed in Plaintiff's More Definite Statement. (D.E. 13, p. 3).

Plaintiff subsequently filed his More Definite Statement where he named and answered all of the Court's questions as to the following eight defendants: (1) the TDCJ; (2) Sgt. Zambrano; (3) Assistant Warden Putnam; (4) Major Gould; (5) MS Selles; (6) Christina Rodriguez; (7) Officer Laundry; and (8) Officer Thompson. (D.E. 16). In his

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Amended Complaint, Plaintiff neither listed nor answered as directed the questions set forth by the undersigned with respect to Officer Martin, Officer Cordova, or Officer Espinoza.[3]  Accordingly, the undersigned recommends that Plaintiff's claims against these three defendants be dismissed.

The following representations were made either at the *Spears* hearing or in Plaintiff's Original Complaint and More Definite Statement (D.E. 1, 16):  Sometime prior to November 5, 2014, Plaintiff suffered injuries to his neck, back, and tailbone in connection with a bus accident.  On November 5, 2014, at 3:15 a.m., Plaintiff suffered a blackout spell.  Thirty minutes later and while on crutches, Plaintiff saw Sgt. Zambrano in front of the dining facility hall.  Plaintiff explained his health issues to Sgt. Zambrano, which had been reoccurring for a month due to his prior head injury.

Plaintiff alleges Sgt. Zambrano complained to Plaintiff about having her time wasted by having Plaintiff visit the medical department.  She reportedly told Plaintiff that she would have his blood drawn with a very large instrument.  Plaintiff believes Sgt. Zambrano's actions were calculated to harass Plaintiff and interfere with his right to receive medical treatment.  Plaintiff then left the infirmary, feeling forced to do so by Sgt. Zambrano's actions.

After Plaintiff refused the blood draw, Sgt. Zambrano allegedly ordered officers to search Plaintiff's cell and confiscate his medical and legal property.  Plaintiff's medical property included Plaintiff's medically-prescribed back brace and prescribed pain medications.  Plaintiff's legal materials included transcripts from his criminal trial, legal

---

[3] A review of the More Definite Statement reveals that Plaintiff provided only conclusory allegations regarding the actions of Defendants Cordova, Martin, and Espinoza.  (D.E. 16, p. 3).

books, legal notes, research materials, case citations, court opinions, and other court documents from his criminal trial.

Sgt. Zambrano took possession of Plaintiff's confiscated property. Plaintiff demanded that his medical and legal property be returned. He explained to Sgt. Zambrano that: (1) the back brace was needed to stabilize his injured back and prevent pain; and (2) the medications were prescribed to provide relief for his back, neck, severe headaches, and spasms. Plaintiff further told Sgt. Zambrano that his legal materials were necessary to allow him to challenge his state conviction. Plaintiff alleges Sgt. Zambrano, however, refused to return the property to Plaintiff or provide Plaintiff with "confiscation papers" to allow Plaintiff an opportunity to recover his property. Plaintiff further alleges Sgt. Zambrano subsequently distributed Plaintiff's property to her inmate workers and subordinate officers.

On November 5, 2014, the medical provider scheduled Plaintiff for a doctor's appointment to address his neck injury, headaches, and blackouts. According to Plaintiff, Sgt. Zambrano ordered Plaintiff not to attend the appointment. Plaintiff explained to Sgt. Zambrano that the doctor was going to recommend Plaintiff to visit the local hospital for emergency treatment. Plaintiff alleges Sgt. Zambrano insisted that she better not find out that Plaintiff had gone to the scheduled appointment. Out of fear for his safety, Plaintiff did not attend his appointment.

The doctor documented Plaintiff as a "no show," and Plaintiff did not see a doctor until six months later. During this time, Plaintiff's injuries worsened, and he suffered pain. On April 20, 2015, Plaintiff's back collapsed since he was not wearing his back

brace. Plaintiff fell to the ground and suffered severe pain from the fall. Plaintiff believes his overall healing has slowed due to Sgt. Zambrano's alleged actions.

Assistant Warden Putnam investigated Plaintiff's Step 1 grievance complaint that Sgt. Zambrano had stolen his medical property and legal materials. Plaintiff's Step 1 grievance is dated November 15, 2014. (D.E. 1-4, pp. 7-8). Assistant Warden Putnam concluded in his response dated January 12, 2015, that no evidence had been presented to show that any items were taken from Plaintiff's cell. (D.E. 1-4, p. 8). Plaintiff's Step 2 grievance on this issue was also denied. (D.E. 1-4, pp. 9-10).

Sometime in 2015, Plaintiff sued Sgt. Zambrano in state court, claiming in part that her actions in confiscating his legal and medical materials had impaired his ability to pursue certain claims challenging his state conviction. Sgt. Zambrano and other named Defendants then are alleged to have engaged in a series of acts in retaliation for Plaintiff filing and refusing to dismiss the state court lawsuit against Sgt. Zambrano. These retaliatory acts are described by Plaintiff as follows:

(1) On February 18, 2016, Sgt. Zambrano directed Officer Laundry to threaten Plaintiff with harm and ongoing problems if Plaintiff did not drop his lawsuit. She further directed Officer Laundry to bring a false disciplinary case against Plaintiff on February 24, 2016, where Officer Laundry provided false testimony. Plaintiff was ultimately found not guilty, and the disciplinary case was dismissed.

(2) On May 3, 2016, Sgt. Zambrano directed Officer Laundry to bring another false disciplinary case against Plaintiff because Plaintiff had refused to dismiss his state court case against Sgt. Zambrano.

(3) On December 7, 2017, Sgt. Zambrano contributed to Major Gould's decision to authorize officers to bring false disciplinary cases against Plaintiff and to grade them as major infractions when they were in fact

minor infractions. Major Gould provided this authorization because Plaintiff had filed a state court action against TDCJ officials.

(4) On February 14, 2018, Sgt. Zambrano directed Officer Thompson to bring three false disciplinary cases against Plaintiff in order to steal funds from Plaintiff's income trust account. Two of the three cases were overturned. The third case failed to provide Plaintiff with any notice of wrongdoing.

(5) On February 20, 2018, Officer Thompson stole Plaintiff's grievance file and refused to refund Plaintiff's income trust account which were charged in connection with grievances filed by Plaintiff.

(6) Major Gould authorized Officer Lopez to bring a false disciplinary case based on Plaintiff's failure to go to a medical appointment on February 28, 2018. Plaintiff, however, never had a medical appointment scheduled. Major Gould graded Plaintiff's offense as a major infraction.

(7) On July 2, 2018, Sgt. Zambrano directed Officer Thompson to confiscate Plaintiff's privileged correspondence material and evidence that she knew was being used by Plaintiff as summary judgment evidence against Sgt. Zambrano in the state court case.

(8) On July 2, 2018, MS Selles notified Officer Thompson that she had received Plaintiff's legal mail from the Attorney General's office related to his state court case. Officer Thompson then stopped MS Selles and stole all of the legal mail and other legal materials Plaintiff was using against Sgt. Zambrano at trial. Plaintiff never received this legal material back from Officer Thompson.

(9) On July 10, 2018, Sgt. Zambrano directed MS Selles to steal Plaintiff's first set of summary judgment evidence against Sgt. Zambrano from the prison mailbox to cause Plaintiff to miss his deadline date in state court.

(10) Sgt. Zambrano directed MS Selles to prevent Plaintiff's second set of summary judgment evidence from being mailed to the trial court on three different occasions, August 21, 2018, August 23, 2018, and August 27, 2018.

(11) On August 27, 2018, Plaintiff filed a grievance against MS Selles complaining about her actions in stealing the first set of summary judgment evidence and preventing the second set of summary judgment

evidence from being mailed to the trial court. Sgt. Zambrano directed UGI Rodriguez to interfere with Plaintiff's grievance. UGI Rodriguez then held the grievance for 90 days and caused it to be dismissed as time barred. MS Selles also participated in preventing Plaintiff from filing this grievance against her.

(12)    Because Plaintiff would not voluntarily dismiss his state court action, Sgt. Zambrano and other Defendants fulfilled their promise to have Plaintiff transferred to another prison on November 8, 2018.

Plaintiff's claims against Sgt. Zambrano in the state court action were ultimately dismissed because Plaintiff missed a court deadline to present his summary judgment evidence. Plaintiff was transferred to the Michael Unit after the dismissal of his state court action.

## III.    LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the

opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the

victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV.   DISCUSSION

### A.      Eleventh amendment immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues the individual Defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against the individual Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

Plaintiff seeks to sue the TDCJ. However, "[t]he Eleventh Amendment bars suit against state entities such as TDCJ … regardless of whether money damages or injunctive relief is sought under § 1983." *See Flaming v. University of Texas Medical Branch*, No. H-15-2222, 2016 WL 727941, *5 (S.D. Tex. Feb. 24, 2016) (citing *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1988) and *Clay v. Texas Women's University*, 728 F.2d 714, 715-16 (5th Cir. 1984)). Accordingly, it is respectfully recommended that Plaintiff's § 1983 claims against the TDCJ be dismissed as barred by the Eleventh Amendment.

### B. Claims for Declaratory and Injunctive Relief

Plaintiff seeks declaratory and injunctive relief against Defendants based on the conditions of confinement at the McConnell Unit. Claims for declaratory and injunctive relief based on the conditions of confinement, however, are rendered moot upon prisoner's release from custody or transfer to another facility. *Smith v. City of Tupelo, Mississippi*, 281 F. App'x 279, 282 (5th Cir. 2008) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)). *See also Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000) (requests for injunctive and declaratory relief become moot when inmate is transferred to another facility). Furthermore, the possibility of Plaintiff's return to the McConnell Unit is much too speculative to warrant relief. *Smith*, 281 F. App'x at 282. Because Plaintiff is no longer incarcerated at the McConnell Unit, it is respectfully recommended that his claims for declaratory and injunctive relief against Defendants be dismissed.

## C.    Deliberate Indifference

Plaintiff claims that Sgt. Zambrano acted with deliberate indifference to Plaintiff's serious medical needs through her actions taken on November 5, 2014.  Plaintiff alleges that Sgt. Zambrano interfered with his right to have medical treatment for his serious medical conditions involving his neck, back, and constant pain.  He alleges that she attempted to force Plaintiff to undergo a procedure involving a very large instrument, ordered officials to take his back brace and other prescribed medications, and ordered Plaintiff not to attend an important medical appointment.  As a result of Sgt. Zambrano's conduct, Plaintiff's injuries worsened with his back collapsing on April 20, 2015 due to not having a back brace.

Before considering the merits of Plaintiff's claim, it is necessary to determine whether Plaintiff brought his deliberate indifference claim in a timely manner.  Federal civil rights actions instituted in Texas, such as those brought pursuant to § 1983, are deemed analogous to personal injury claims, and, therefore, the applicable limitations period is the two years fixed by Tex. Civ. Prac. & Rem. Code § 16.003(a).  *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001).  Accrual of a § 1983 claim is governed by federal law.  *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002).  A cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.  *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998).  Dismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations.  *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999).  "A § 1983 claim to redress a medical injury arising from deliberate indifference

to a prisoner's serious medical needs accrues when the plaintiff knows of his physical injury and its cause." *Denby v. Norwood*, No. 7:13-CV-140, 2016 WL 2937470, at *3 (N.D. Tex. Apr. 26, 2016).

 Plaintiff filed this civil rights action on September 9, 2019, nearly five years after the events forming the basis of Plaintiff's deliberate indifference claims occurred with respect to Sgt. Zambrano's actions on November 5, 2014. Plaintiff's allegations, taken as true, reflect that he discovered the full extent of his injuries resulting from Sgt. Zambrano's actions on April 20, 2015, when his back collapsed. Even assuming that Plaintiff's deliberate indifference claims against Sgt. Zambrano accrued as late as March 20, 2015, they are time barred pursuant to the running of the applicable two-year statute of limitations. Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims against Sgt. Zambrano be dismissed with prejudice as time barred.

### D. Due Process

*(1) Confiscation of Property on November 5, 2014*

Plaintiff claims that Sgt. Zambrano violated his due process rights by confiscating his medical property and legal materials on November 5, 2014, and not providing him with an opportunity to submit papers to seek return of the property. With respect to the confiscation of Plaintiff's property on that date, Plaintiff claims that Assistant Warden Putnam violated his due process rights through his improper investigation of Plaintiff's Step 1 grievance and decision not to grant Plaintiff any relief.

State law claims analogous to Plaintiff's due process claims "are conversion of personal property and taking or detaining the personal property of another, for which the statute of limitations is the same two-year provision applicable to personal injury claims." *Harris v. Doe*, No. 4:18-cv-638, 2019 WL 5739062, at *4 (N.D. Tex. Nov. 5, 2019) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a)). Plaintiff's allegations, taken as true, reflect that he had reason to know of his injuries associated with Sgt. Zambrano's conduct on November 5, 2014, the day she confiscated Plaintiff's medical property and legal materials. Plaintiff's due process claim against Sgt. Zambrano, therefore, accrued on that day. Plaintiff further had reason to know of his claim against Assistant Warden Putnam as of January 12, 2015, the day this defendant denied his Step 1 grievance.

Plaintiff's due process claims against Sgt. Zambrano and Assistant Warden Putnam are barred by the running of the applicable statute of limitations because his complaint was filed more than four years later on September 9, 2019. Accordingly, the undersigned respectfully recommends that Plaintiff's due process claims against Sgt. Zambrano and Assistant Warden Putnam, arising from the taking of his property on November 5, 2014, be dismissed with prejudice as time barred.

### *(2) Legal Materials Stolen in February and July, 2018*

Liberally construed, Plaintiff appears to claim due process violations based on the conduct of Defendants Zambrano, Thompson, and Selles in stealing Plaintiff's grievance file, his legal mail, and other legal materials Plaintiff sought to use against Sgt. Zambrano at trial in the state court action.

The Fourteenth Amendment of the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. The Supreme Court has held that a random and unauthorized intentional deprivation of property does not violate the Due Process Clause if the State provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 534-35 (1984); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). A claimant must either take advantage of the available remedies or show that the available remedies are inadequate. *Hudson*, 468 U.S. at 534-35.

Texas law provides Plaintiff with possible post-deprivation remedies. Texas law allows recovery of monetary damages for the loss of property that has been taken without authorization. *See Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (in Texas, the tort of conversion fulfills this requirement); *see also Beam v. Voss*, 568 S.W.2d 413, 420-21 (Tex. Civ. App.– San Antonio 1978, no writ) (conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with the owner's rights). In addition, state law specifically provides that inmates may recover up to $500.00 on a claim that the TDCJ lost or damaged personal property. *See* Tex. Gov't Code § 501.007.

A prisoner such as Plaintiff may bring suit in federal court for property loss only if relief is denied in state court on grounds other than the merits of his claim. *See Thompson v. Steele*, 709 F.2d 381, 383 n.3 (5th Cir. 1983). The burden is on the inmate to show that the post-deprivation remedy is inadequate. *Myers*, 97 F.3d at 94. Plaintiff failed to indicate in his pleadings or at the *Spears* hearing that he had filed a state court

lawsuit either to seek return of his materials taken in February and July, 2018 or money damages for the taken property.

Because Texas law provides adequate post-deprivation remedies and Plaintiff has failed to pursue them, the taking of Plaintiff's materials does not state a violation of the Due Process Clause. *See Hudson*, 468 U.S. at 536 (noting that, even when a prisoner's property was intentionally destroyed, such destruction did not violate the Fourteenth Amendment because state law provided the prisoner with an adequate post-deprivation remedy). Accordingly, the undersigned respectfully recommends that Plaintiff's due process claims against Defendants Zambrano, Selles, and Thomson, arising in connection with the taking of his legal property in February and July 2018, be dismissed as frivolous and/or for failure to state a claim for relief.

### E. Access to Courts

Plaintiff claims that he has been denied access to the courts. Prisoners have a constitutionally protected right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. *See also Jones*, 188 F.3d at 325 (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement).

Because the right of access is not a "freestanding right," to state a cognizable First Amendment claim, the plaintiff must demonstrate actual injury resulting from an alleged

denial of access to the courts. *Lewis,* 518 U.S. at 351; *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999). Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts. *Lewis*, 518 U.S. at 349.

To meet the standing requirement, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Plaintiff "must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him." *Id.* at 819. In particular, to succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *See Lewis*, 518 U.S. at 356. He must show "that his position as a litigant was prejudiced" as a direct result of the denial of access. *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

### (1) Confiscation of Legal Materials on November 5, 2014

Plaintiff claims that Sgt. Zambrano's confiscation of his legal property on November 5, 2014 prevented him from challenging his state conviction and sentence. Because his legal materials were taken, Plaintiff asserts that he was prevented from: (1) challenging the charging instrument in his state criminal action as insufficient to satisfy Texas Constitutional law; (2) presenting important information in support of a state mandamus petition; (3) presenting non-frivolous issues in a state habeas petition; and (4) filing a federal habeas petition in a timely manner.

Plaintiff's allegations, taken as true, reflect that he had reason to know of his injuries associated with Sgt. Zambrano's conduct on November 5, 2014, the day she confiscated legal materials. Plaintiff's denial-of-access-to-courts claim against Sgt. Zambrano, therefore, is barred by the running of the applicable statute of limitations because his complaint was filed nearly five years later on September 9, 2019. Accordingly, the undersigned respectfully recommends that Plaintiff's claim for the denial of access to courts, arising from the taking of his legal materials on November 5, 2014, be dismissed with prejudice as time barred.

*(2) Taking of Evidence In July and August, 2018*

Plaintiff claims that, in July and August 2018, Defendants Zambrano, Selles, and Thompson denied him access to courts when they participated in: (1) confiscating the legal materials Plaintiff sought to use against Sgt. Zambrano in the state court action; (2) stealing Plaintiff's first set of summary judgment evidence that he sought to file in the state court action against Sgt. Zambrano; and (3) preventing Plaintiff from filing his second set of summary judgment evidence against Sgt. Zambrano in the state court action. According to Plaintiff, his claims against Sgt. Zambrano in the state court action were ultimately dismissed because the actions of Defendants Zambrano, Selles, and Thompson caused Plaintiff to miss a court deadline to present his summary judgment evidence.

In his state court action, Plaintiff asserted claims arising in connection with his confinement at the McConnell Unit. Plaintiff's allegations, taken as true, suggest that the actions of Defendants Zambrano, Selles, and Thompson caused Plaintiff to lose

actionable claims in the state court action and that Plaintiff suffered prejudice as a result. *See Lewis*, 518 U.S. at 356. Accordingly, the undersigned recommends that the Court retain Plaintiff's claims for denial of access to the courts, arising from conduct occurring in July and August 2018, against Defendants Zambrano, Selles, and Thompson.

### F. Retaliation

Plaintiff claims that several defendants retaliated against him after he had filed a state court action against Sgt. Zambrano. Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris*, 449 F.3d at 686. Thus, "[a] prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected inmates." *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.*

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones*, 188 F.3d at 324-25 (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim." *Jones*, 188 F.3d at 325. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id.* In other words, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Woods*, 60 F.3d at 1166.

Plaintiff alleges that Defendants Zambrano, Gould, Selles, Rodriguez, Laundry and Thompson engaged in a series of retaliatory acts against Plaintiff after Plaintiff had filed a state court action against Sgt. Zambrano. Plaintiff's allegations indicate that,

following the filing of his state court action, he was subjected to many adverse actions including the following: (1) authorization from Major Gould, through Sgt. Zambrano's bidding, that false disciplinary cases be brought against Plaintiff for minor infractions which were then deemed major infractions; (2) the filing of several false disciplinary cases against Plaintiff; (3) the stealing of Plaintiff's grievance file and refusal to refund the income trust account which were charged in connection with his grievances; (4) the stealing of Plaintiff's various legal materials which prevented him from properly litigating his state court action against Sgt. Zambrano; (5) interference with Plaintiff's ability to file certain grievances; and (6) threats of transferring Plaintiff to another unit, which was ultimately carried out after the state court action was dismissed. According to Plaintiff, these actions were taken against Plaintiff to force him to dismiss his state court action against Sgt. Zambrano.

Taken as true, Plaintiff's allegations state retaliation claims as they suggest a pattern of retaliatory conduct undertaken by Defendants Zambrano, Gould, Selles, Rodriguez, Laundry, and Thompson. While many of the acts of retaliation by themselves do not constitute constitutional violations, they do demonstrate a chronology of events from which retaliation may plausibly be inferred. Because Plaintiff's allegations are sufficient at this stage to state retaliation claims, the undersigned recommends that they be retained against Defendants Zambrano, Gould, Selles, Rodriguez, Laundry and Thompson.

## G.     Grievance Process

Plaintiff claims that Defendants Zambrano, Rodriguez, and Selles interfered with Plaintiff's ability to file a grievance complaining about MS Selles's actions in stealing the first set of summary judgment evidence and preventing the second set of summary judgment evidence from being mailed to the trial court. According to Plaintiff, he filed the grievance on August 27, 2018. Plaintiff asserts that Sgt. Zambrano directed UGI Rodriguez to interfere with Plaintiff's grievance, that UGI Rodriguez then held the grievance for 90 days and caused it to be dismissed as time barred, and that MS Selles also participated in preventing Plaintiff from filing this grievance against her.

Plaintiff's allegations, at best, point to his dissatisfaction with the actions taken by Sgt. Zambrano, UGI Rodriguez, and MS Selles in processing and/or rejecting Plaintiff's formal grievance. Such allegations, however, fail to state a cognizable constitutional claim. *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not constitutionally required); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances).

Accordingly, the undersigned recommends that Plaintiff's claims against Sgt. Zambrano, UGI Rodriguez, and MS Selles regarding the grievance process be dismissed for failure to state a claim and/or as frivolous.

## V.    RECOMMENDATION

For purposes of § 1915A, Plaintiff has stated sufficient facts that, if true, state (1) claims for the denial of access to courts, arising from conduct occurring in July and August 2018, against **Sgt. Zambrano, MS Selles, and Officer Thompson** in their individual capacities; and (2) retaliation claims against **Sgt. Zambrano, Major Gould, MS Selles, UGI Rodriguez, Officer Laundry, and Officer Thompson** in their individual capacities. Accordingly, it is respectfully recommended that these claims be **RETAINED**.  The undersigned will order service as to these defendants by separate order.

The undersigned further recommends that: (1) Plaintiff's claims against **Officer Martin, Officer Cordova, or Officer Espinoza** be **DISMISSED** from this action; (2) Plaintiff's claims for money damages against all individuals Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; (3) Plaintiff's claims against **the TDCJ** be **DISMISSED** as barred by the Eleventh Amendment; (4) Plaintiff's claims for declaratory and injunctive relief against all defendants be **DISMISSED** as rendered moot; and (5) Plaintiff's claims against the remaining defendants be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted this 24th day of March 2020.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).